IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ANTONIO BUEHLER, § | |
| PLAINTIFF, § | |
| § | |
| V. § | |
| § | |
| CITY OF AUSTIN, AUSTIN POLICE § | |
| DEPARTMENT, RANDY DEAR, § | CAUSE NO. 1:17-CV-724-LY |
| ALJOE GARIBAY, QUINT SEBEK, § | |
| WESLEY DEVRIES, JOHN LEO § | |
| COFFEY, MONIKA MCCOY, RYAN § | |
| ADAM, ALLEN HICKS, AND § | |
| REGINALD PARKER, § | |
| DEFENDANTS. § | |

## **MEMORANDUM OPINION AND ORDER**

Before the court in the above-styled and numbered cause are Defendants' Rule 12(b)(6) Motion to Dismiss filed November 30, 2017 (Dkt. No. 20), Plaintiff's Opposition to Defendants' 12(b)(6) Motion filed December 14, 2017 (Dkt. No. 21), Defendants' Reply to Plaintiff's Opposition to Defendants' Rule 12(b)(6) Motion to Dismiss filed December 21, 2017 (Dkt. No. 24), Defendant Officers' Rule 12(b) Motion to Dismiss filed July 12, 2018 (Dkt. No. 33), Plaintiff's Opposition to Defendant Officers' 12(b) Motion to Dismiss filed July 26, 2018 (Dkt. No. 44), and Defendants' Reply to Plaintiff's Opposition to Defendants Rule 12(b) Motion to Dismiss filed August 2, 2018 (Dkt. No. 45). Having reviewed the motions, responses, replies, applicable law, and the entire case file, the court renders the following order.

### I. BACKGROUND

Antonio Buehler ("Buehler") is a founder and member of the Peaceful Streets Project, an organization that seeks to hold law enforcement officials accountable and assist those who may become victims of police misconduct. On August 1, 2015, Buehler and other members of

Peaceful Streets went to Sixth Street in downtown Austin to "cop watch" and record police officers on duty on Sixth Street. Buehler observed Officer Hicks speaking with a religious proselytizer and began recording the interaction. Seeing Buehler videotaping, another officer on duty, Officer Dear, told him to step back and pointed to another location on the street, indicating Buehler needed to move. Buehler and Dear had several exchanges over the next few minutes in which Dear repeatedly told him to back up. Buehler eventually stepped back, but continued to videotape Hicks's interaction with the proselytizer. Dear finally told Buehler that if he continued to interfere with the police officers he would go to jail. In response, Buehler asked Hicks to instruct Dear on Buehler's right to film the police and continued to assert this right to Dear, asking Dear how he was interfering.

Later in the evening, Buehler began to film a different incident between police and the crowds on Sixth Street. At this point, Buehler alleges that Officer Garibay walked up to Buehler and pushed him. Several officers then huddled in the street. Dear walked away from the huddle and approached Buehler and other members of Peaceful Streets, telling them, "Hey, I'm gonna let y'all know, the next time we go to a disturbance and you get in the way ..." at which point Buehler interjected, "We weren't in the way." Dear responded, "Yes you were. The next time you're interfering you're going to be arrested." Buehler continued to ask him how he was interfering with police activity, but Dear responded that Buehler had been warned and walked away. Buehler then asked Officers Garibay and Sebek what qualified as interfering, to which Sebek responded that Buehler needed to remain an arm's length away from the officers. Buehler, asserting that he already was more than an arm's length away, again asked the officers to clarify what counted as interfering. Garibay and Buehler proceeded to have a short exchange about what qualified as interfering with public duties. Garibay eventually pointed to a different

spot and told Buehler, "Hey, arm's length! Stand over there." Buehler responded that he was already standing at arm's length.

At this point, the Austin Police Department Mounted Patrol passed by in the street, and video footage shows Dear stepping closer to Buehler. Buehler alleges that he stayed stationary while Dear pressed up against him and blocked his camera. Dear told Buehler that the officers were going back on patrol and asked Buehler to step back several times. Buehler again disputed that he was interfering, asserting that Dear had stepped toward him. According to Buehler, at this point he complied with the order and stepped back. Buehler alleges that despite stepping back, Dear told Buehler he was under arrest. Video footage shows Buehler handing off his camera to a Peaceful Streets member. Contemporaneously, Dear, Garibay, and Officer DeVries grabbed Buehler and forced him face down onto the street. Garibay placed his knee in Buehler's back, and Officer McCoy placed her knee on Buehler's lower calves while Officer Coffey handcuffed Buehler. Following Buehler's arrest, the Austin Police Department assigned Detective Reginald Parker to investigate the incident. Parker concluded that no officer misconduct had taken place.

On August 2, 2017, Buehler filed this lawsuit alleging a violation of the First, Fourth, and Fourteenth Amendment. Buehler filed an Amended Complaint on November 27, 2017. The City of Austin and Officers Dear, Garibay, Sebek, DeVries, Coffey, McCoy, Adam, Hicks, and Parker moved to dismiss the amended complaint for failure to state a claim.

## II. LEGAL STANDARD

### A. Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P.12(b)(6). A complaint

need not contain detailed factual allegations, but in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, the court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2009).

### B. Qualified Immunity

Qualified immunity insulates a government official from damages arising out of civil liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In striking this balance, qualified immunity shields "government officials performing discretionary functions" from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." *Harlow*, 457 U.S. at 818; *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

Where a public official invokes qualified immunity as a defense to a civil action against him, the plaintiff then has the burden "to demonstrate the inapplicability of the defense." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). To meet this burden, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc).

"For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (alteration in original). Once a plaintiff alleges that an official's conduct violated a clearly established right, the court must then determine "whether the official's conduct was objectively reasonable under the law at the time of the incident." *Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005).

An official's conduct is not objectively unreasonable "unless all reasonable officials in the [official's] circumstances would have then known that the [official's] conduct violated the plaintiff's rights." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015). When denying qualified immunity to an officer, a court must point to "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013). Precedent existing at the time of the challenged conduct "must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

5

## III. INDEPENDENT INTERMEDIARY DOCTRINE

The City first argues that Buehler's First Amendment and Fourth Amendment claims are barred by the independent intermediary doctrine. Under the independent intermediary doctrine, if a grand jury or magistrate judge has made a finding of probable cause, that finding breaks the causal chain between the defendant and unlawful arrest. *See McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017). The "chain of causation is broken" if "the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Id.* This may be the case if the defendant maliciously "with[e]ld relevant information or otherwise misdirect[ed] the independent intermediary by omission or commission." *Buehler v. City of Austin*, 824 F.3d 548, 554 (5th Cir. 2016). Thus, the independent intermediary "doctrine applies only when all of the facts are presented and the intermediary's decision is truly independent of the wrongfulness of the defendant's conduct: Any misdirection of the magistrate or the grand jury by omission or commission perpetuates the taint of the original official behavior." *Melton v. Phillips*, 837 F.3d 502, 510 (5th Cir. 2016).

When considering the "'taint exception' on a motion to dismiss where the standard is more permissive[,] a court must accept all factual allegations as true, and the complaint must state only a plausible claim." *McLin*, 866 F.3d at 689–90. Allegations of taint "may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference." *Id.*

Buehler argues that the taint exception to the intermediary doctrine should not apply because the warrant issued by the magistrate judge was issued based on false and misleading statements made by Officer Garibay. Buehler does not point to specific misrepresentations made by Garibay, and instead states that Garibay's description in his Affidavit for Warrant of the

6

situation is in stark contrast to recording of his interaction with the officers on Sixth Street. Without identifying specific representations made by Garibay, Buehler states that these misrepresentations caused the warrant to be issued without probable cause. Buehler's complaint includes eight pages of factual allegations about the interactions and events leading up to his August 2, 2015 arrest. The complaint and the arrest warrant tell different narratives. The complaint alleges that Buehler was peacefully filming the conduct of a group of police officers interacting with a religious proselytizer on Sixth Street. It details interactions and conversations Buehler had with police throughout the night. The story goes like this: Buehler attempts to film interactions between the police and people on Sixth Street, and the police tell Buehler to step behind "an arbitrary line with no logical relevance to the situation." This happened at least three different times throughout the night—usually Buehler stepped back, but eventually he did not. Buehler claims he did not interfere with the police officers. The affidavit for warrant of arrest tells a different story: it states that officers had to move around Buehler when responding to incidents on the street and that Buehler refused to maintain a safe distance from the officers trying to monitor the crowds on Sixth Street.

Accepting all factual allegations as true and construing all inferences in favor of Buehler, Buehler pleads facts supporting the taint exception sufficient to survive a motion to dismiss. Much like the facts presented to the Fifth Circuit in *McLin*, Buehler alleges that the warrants were issued based on misrepresentations of his interactions with the police on Sixth Street. *Cf.* 866 F.3d at 690. Buehler claims police acted this way to prevent him from recording police interactions; the police claim they acted this way to prevent him from interfering with their police duties. Buehler claims that the misrepresentation in the arrest warrant tainted the magistrate's deliberations and caused a warrant to be issued without sufficient probable cause.

Because Buehler pleads facts sufficient to support the taint exception, the existence of arrest warrants does not insulate the City from liability. Thus, the independent intermediary doctrine does not bar his First or Fourth Amendment claims.

## IV. FIRST AMENDMENT RETALIATION CLAIM

The First Amendment protects against "direct limits on individual speech" as well as adverse governmental action against an individual in retaliation for the exercise of protected speech activities. *Id.* at 696. To allege a claim of First Amendment retaliation, Buehler must show that "(1) he was engaged in constitutionally protected activity; (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse actions were substantially motivated by the constitutionally protected conduct." *Id.* (internal punctuation omitted). The City only contests the second element, which "requires some showing that the plaintiff's exercise of free speech has been curtailed." *Id.*

Here, Buehler argues that he was engaged in the constitutionally protected activity of recording the police, which is recognized in the Fifth Circuit. *See Turner*, 848 F.3d at 689. Despite the City's arguments to the contrary, Buehler has alleged with the specificity needed at the motion to dismiss stage that his attempts to record the police were thwarted on several occasions over the course of his night recording police. Specifically, Buehler alleges that the police officers violated this right by standing in the way of filmers, ordering filmers to stand in places from which they do not have a clear ability to film, blocking the view of filmers cameras with their bodies or other devices, threatening to arrest filmers, aggressively, confronting filmers, and then wrongfully arresting filmers. Accepting these factual allegations as true and construing

8

all inferences in favor of Buehler, Buehler's pleads facts sufficient to allege a First Amendment retaliation claim.

The City asserts that Buehler's retaliation claim nonetheless fails because the right to film the police was not a clearly established at the time of his arrest in 2012. In *Turner*, the Fifth Circuit concluded that "there was no clearly established First Amendment right to record the police" when the underlying incident occurred in 2015, and concluded that the police officers were entitled to qualified immunity. *Turner*, 848 F.3d at, 687. So too here. The incident complained of took place in 2012, five years before the Fifth Circuit determined that there was a clearly established First Amendment right to record the police. As in *Turner*, the officers in this case are entitled to qualified immunity on Buehler's First Amendment retaliation claim.

Buehler nonetheless argues that the right to film was clearly established by the Austin police department at the time of the incident based on a training bulletin issued by the department to its officers. The standard for qualified immunity is whether there was clearly established *law*, not whether there was a clearly established *policy*. Buehler invokes no authority to prove otherwise.

Buehler also argues that the City is now collaterally estopped from arguing that the First Amendment right to film officers was not clearly established based on an order rendered by a United States Magistrate Judge in a previous action between Buehler and the City. *Buehler v. City of Austin*, No. A-13-CV-1100-ML, 2015 WL 737031, at \*12 (W.D. Tex. Feb. 20, 2015), *aff'd sub nom. Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548 (5th Cir. 2016). The magistrate judge concluded that the right to record police officers was clearly established at the time of Buehler's arrest. The magistrate judge nonetheless granted summary judgment for the City and dismissed all claims because he concluded that the First Amendment

retaliation claim was barred by the independent intermediary doctrine. The City and the Austin Police Department were parties to that proceeding, and did not appeal the conclusion that the right to record was clearly established.

"Under the doctrine of collateral estoppel . . . the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 n.5 (1979). The conclusion that the right to record the police is clearly established was not necessary in granting summary judgment. In fact, the court granted summary judgment in spite of concluding that the police officers were not entitled to qualified immunity based on the independent intermediary doctrine. Accordingly, the City is not collaterally estopped from arguing that the First Amendment right to film officers was not clearly established. Accordingly, the court will dismiss Buehler's First Amendment retaliation claim because it is barred by qualified immunity.

### B. FOURTH AMENDMENT EXCESSIVE FORCE CLAIM

A claim for excessive force under the Fourth Amendment requires "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Pena v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (internal quotations and citation omitted). "The second and third elements collapse into a single objective-reasonableness inquiry, *see Scott v. Harris*, 550 U.S. 372, 381 (2007), guided by the following factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Though "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or

threat thereof to effect it," *id.*, officers must "refrain from using excessive force, that is more force than is reasonably necessary, when effectuating an arrest." *United States v. Brugman*, 364 F.3d 613, 616 (5th Cir. 2004). "Excessive force claims are necessarily fact-intensive; whether the force used is excessive or unreasonable depends on the facts and circumstances of each particular case." *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 728 (5th Cir. 2018) (internal quotations and citation omitted). Because this is the motion-to-dismiss stage, we accept Buehler's factual allegations as true to determine whether he plausibly states a claim for relief, recognizing that the City will have the right to contest these assertions at trial.

Buehler alleges that he was bruised on his face, head and triceps when he was slammed into the pavement by police. He continues to experiences pain and headaches. Though the City disputes his allegations, Buehler's claimed injuries are sufficient to satisfy the injury prong at the motion-to-dismiss stage, at which we accept his factual allegations as true. *See Pena*, 879 F.3d at 619.

As for the second and third prongs: was Buehler's injury caused by objectively unreasonable and excessive force? Dear asked Buehler to step back after Buehler held his camera unnecessarily close to Dear's face, which Dear claims interfered with his ability to monitor the crowd on Sixth Street. Dear asked Buehler several times to step back and then said, "Go head and turn around, turn around. You're under arrest." Buehler attempted to hand off his camera to another filmer at which point Buehler alleges "Dear, Garibay, and DeVries grabbed Buehler's body and arms from behind and threw him to the ground, Dear for no apparent reason then decided to throw the full weight of his large body on Buehler's back. DeVries placed his hand on the side of Buehler's head and pushed it into the pavement while Garibay placed his knee in Buehler's back." Buehler further alleges that "John Leo Coffey assisted in the arrest by

handcuffing Buehler. Monika McCoy assisted in the arrest by placing her knee on Buehler's lower calves."

In considering whether an officer's actions were objectively unreasonable, the court will "analyze the officers separately" if "they are alleged to have participated in distinct ways." *Pena*, 879 F.3d at 619. Dear, Garibay, DeVries, and McCoy will be analyzed together because they jointly participated in the arrest of Buehler.

### a. Buehler has stated a claim for excessive force against Dear, Garibay, DeVries, and McCoy.

Buehler argues that the Dear, Garibay, DeVries, and McCoy used an unnecessary amount of force in arresting him, in light of the fact that Buehler was armed only with a camera, took no action to indicate that he was a danger to himself or others, or about to evade detention. Here, Buehler was arrested for interference with police duties. Though far from the most serious of crimes, Buehler's actions did impede the ability of the officers to maintain their safety as they monitored the morass of bodies on Sixth Street. That said, the force officers used once they initiated the arrest is objectively unreasonable when considering Buehler's behavior.

Buehler's complaint alleges that once he turned around and attempted to pass off his camera, he was not actively resisting arrest or attempting to flee from the officers. *Cf. Cooper v. Brown*, 844 F.3d 517, 523 (5th Cir. 2016) (concluding that an arrest was objectively unreasonable where the defendant was not suspected of committing a violent offense and was not actively resisting arrest or attempting to flee). On a motion to dismiss, Buehler's well-pleaded allegations are entitled to a presumption of truth. Accordingly, Buehler has stated an excessive force claim against Dear, Garibay, and DeVries. The City further argues that Buehler did not plead injury resulting from his interactions with Officers Dear, Garibay, DeVries, and McCoy, but this is incorrect—Buehler alleges that he was bruised on his face, head and triceps, and

12

experiences continued pain and headaches as the result of his interaction with these police officers.

It is a closer call whether Buehler has stated a claim for excessive force against McCoy, who he alleges assisted in the arrest by placing her knee on Buehler's lower calves. Considering that this was part of the arrest of a suspect who was not resisting arrest, the claim that McCoy continued to restrain him when he was not resisting arrest is sufficient to survive a motion to dismiss.

### b. Buehler has not stated a claim for excessive force against Coffey, Sebek, Hicks, or Adam.

Buehler also alleges a claim for excessive force against Coffey, who assisted in the arrest by handcuffing Buehler. Buehler does not make any further allegations about the nature of this arrest or the amount force used by Coffey. As such, he has failed to state an excessive force claim against Coffey, and the court will dismiss the excessive force claim against Coffey.

Buehler also alleges a claim for excessive force against Sebek, Hicks, and Adam. Buehler does not allege that Sebek, Hicks, or Adam took part in the arrest of Buehler. Sebek and Hicks both directed him to move, but did not take part in his arrest. Buehler alleges that Hicks and Adam gave direction to the officers throughout the night, but, again, does not allege that they took part in his arrest. As such, he failed to state an excessive force claim against Sebek, Hicks, and Adam, and the court will dismiss the excessive force claims against these officers.

### c. Dear, Garibay, DeVries, and McCoy are not entitled to qualified immunity.

The City finally argues that officers are entitled to qualified immunity because it is not clearly established that the officers' use of control techniques in making an arrest is use of unconstitutionally excessive. Here, however, the question isn't the use generally of "control techniques," but in the continued use of force after a suspect is no longer resisting arrest.

"[O]nce an arrestee stops resisting, the degree of force an officer can employ is reduced." *Cooper v. Brown*, 844 F.3d 517, 524–25 (5th Cir. 2016). "[T]he law is clear that once the plaintiff stops resisting or is in the deputy's control, the permissible degree of force lessens." *Aguilar v. Robertson*, 512 F. App'x 444, 450 (5th Cir. 2013) (quoting *Bush*, 513 F.3d at 502). It is a clearly established right that an individual has the right to be free from the use of excessive force during an arrest. The law is clearly established that when one is not resisting arrest, attempting to escape, or otherwise posing a threat at the time of the alleged use of force, throwing one to the ground and pushing his face into the pavement constitutes an excessive use of force. *See, e.g., Bush*, 513 F.3d at 502 (finding the plaintiff's version of events that "she was not resisting arrest or attempting to flee when [the officer] forcefully slammed her face into a nearby vehicle during her arrest" to indicate a violation of a clearly established right). Accordingly, the court concludes that Dear, Garibay, DeVries, and McCoy are not entitled to qualified immunity.

### C. Bystander Liability

A claim for bystander liability requires that an officer (1) knows a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). "In resolving whether a plaintiff has sufficiently alleged a bystander liability claim we also consider whether an officer 'acquiesce[d] in' the alleged constitutional violation." *Id.* (quoting *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)).

Buehler alleges that officers present at the scene are liable as bystanders for witnessing but not stopping the misconduct of the other officers, though Buehler does not allege bystander liability as a separate cause of action. The City's only argument against the application of

bystander liability is that Buehler's bystander-liability claim fails without an underlying constitutional violation. Since this court concluded that there is a viable excessive force claim against Dear, Garibay, DeVries, and McCoy, Buehler's bystander liability claims will not be dismissed on this ground.

Having determined that Buehler sufficiently pleaded excessive-force claims against Dear, Garibay, DeVries, and McCoy, the court now considers whether Buehler has adequately pleaded facts giving rise to bystander liability claims against Sebek, Coffey, Adam, and Hicks. Buehler alleges that Officers Sebek and Coffey "watched the actions of [Officers Dear, Garibay, and Devries] but did nothing to protect Buehler." He also alleges that the officers had previously huddled in the middle of the street to discuss how they would deal with the situation, and that the arresting officers had been receiving instructions from Officers Adam and Hicks. McCoy placed a knee on Buehler's lower calves to assist in the arrest, and Coffey handcuffed Buehler. However, even taking the facts alleged as true, Buehler has not alleged with any particularity that the officers knew excessive force was being used against Buehler, nor that they had a reasonable opportunity to intervene to stop it. Accordingly, the court will dismiss Buehler's bystander-liability claim against all Defendants.

### D. MUNICIPAL LIABILITY

The City's motion does not explicitly address Buehler's allegation that the City is liable for alleged violations of his First Amendment rights. It does, however, argue that all municipal liaiblity claims against the City fail without an underlying constitutional violation.

To state a claim for municipal liability, a plaintiff must show "a policymaker; an official policy, and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't of*

15

*Soc. Serv.*, 436 U.S. 658, 694 (1978)). Given that the court has concluded that the right to film police was not established at the time of the incident, there is no violation of a constitutional right. Any municipal liability claim against the City for a purported policy violating a constitutional right to film police is dismissed.

The City also asserts that Buehler has not adequately pleaded a failure-to-train claim to hold the City liable for the officers' alleged use of excessive force. To state a failure-to-train claim, a plaintiff must demonstrate that (1) the municipality's training procedures were inadequate; (2) the municipality was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy directly caused the violations in question. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010). "For liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Benavides v. Cty. of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992). Deliberate indifference is a "stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence." *Bd. of the Co. Comm'r of Bryan Co., Ok.*, 520 U.S. 397, 408 (1997). A showing of mere negligence is not enough. *Brown*, 520 U.S. at 407. The plaintiff must also prove that "the identified deficiency in the training program" is "closely related to the ultimate injury." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989).

Buehler's does not allege how the City fails to train its officers in regard to the use of force. He claims that he was subjected to excessive force during a previous arrest and that there have been multiple instances of excessive force used during arrests made by the Austin Police Department. He points the court to two examples of pending cases involving excessive force claims and concludes that the City has shown deliberate indifference to a pattern of excessive force. But Buehler's complaint gives no details about the Austin Police Department's training

program. It asserts no specific inadequacies in the training, and instead relies on conclusory statements that there is an existing pattern that shows a lack of training. Buehler has not shown that the inadequate training directly caused the alleged use of excessive force. *See Zarnow*, 614 F.3d at 170. Thus, Buehler's failure-to-train claim against the City is dismissed.

## V. Defendants' second motion to dismiss for insufficient of service of process is untimely.

Defendant Officers' filed a second motion to dismiss on July 12, 2018 (Dkt. No. 33). The officers argue that Buehler's claims against them should be dismissed because he failed to properly serve the officers. *See* Fed. R. Civ. P. 4(m). A party waives the defense of insufficient service of process if the defense is not raised in the first responsive motion. *See* Fed. R. Civ. P. 12(h)(1); 12(g)(2) ("[A] party that makes a motion under [Rule 12(b)(2)-(5)] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."). Defendant Officers were party to the first motion to dismiss filed on November 30, 2017. Indeed, the motion was focused almost exclusively on Buehler's failure to state viable claims against the officers. They did not raise the defense of insufficient service of process in their first motion, and Rule 12 prevents them from doing so now. Accordingly,

**IT IS THEREFORE ORDERED** that Defendants' Rule 12(b)(6) Motion to Dismiss filed November 30, 2017 (Dkt. No. 20) is **GRANTED**, in part, as follows: Buehler's claims for First Amendment retaliation against all Defendants are **DISMISSED**; Buehler's excessive force claims against Officers Sebek, Hicks, and Adam are **DISMISSED**; Buehler's claim for bystander liability against all Defendants are **DISMISSED**; Buehler's claim for municipal liability against the City is **DIMISSED**. In all other respects, the motion is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Officers' Rule 12(b) Motion to Dismiss filed July 12, 2018 (Dkt. No. 33) is **DENIED**.

The only claims that remain pending are Buehler's excessive force claims against Officers Dear, Garibay, DeVries, and McCoy.

SIGNED this _5th_ day of September, 2018.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE